IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| D. RAY STRONG, as Liquidating Trustee of the Consolidated Legacy Debtors Liquidating Trust, the Castle Arch Opportunity Partners I, LLC Liquidating Trust and the Castle Arch Opportunity Partners II, LLC Liquidating Trust, <br><br> Plaintiff, <br><br> vs. <br><br> KIRBY D. COCHRAN, et al., <br><br> Defendants. | ORDER <br> AND <br> MEMORANDUM DECISION <br><br> Case No. 2:14-cv-788-TC |

This case arises out of the operation and bankruptcy of Castle Arch Real Estate

Investment Company, LLC (CAREIC).  Plaintiff D. Ray Strong (Trustee), in his role as

liquidating trustee, is pursuing the Defendants to recover money for the Liquidating Trusts and

Debtors.  According to the Trustee, the individual Defendants, who participated in the

management of CAREIC, fraudulently raised $73 million from real-estate investors, squandered

the company assets, and used the money to compensate themselves at investors' expense.  He

asserts claims for breach of fiduciary duty, violation of state securities laws and RICO statutes,

and unjust enrichment.

Three sets of Defendants have filed motions to dismiss under Federal Rule of Civil

Procedure 12(b)(6).[1]  They collectively assert that the Trustee's complaint fails to state a claim

---

[1]See Defs. Austin & Austin Capital Solutions' Renewed & Expanded Mot. to Dismiss, ECF No. 107; Mot. of Dfts. Robert Clawson & Hybrid Advisor Group to Dismiss the Compl.

for which relief may be granted because, among other reasons, the claims are time-barred, the fraud-based claims do not satisfy the Rule 9(b) pleading standard, certain claim elements (such as a fiduciary duty) are not sufficiently pleaded under Rule 8, and the equitable relief claims are barred because the Trustee has an adequate remedy at law.

For the reasons set forth below, the court DENIES the motions to dismiss.

## FACTUAL ALLEGATIONS[2]

In April 2004, Defendants Robert Geringer and Jeff Austin formed CAREIC as a California limited liability company in the business of real estate investment. CAREIC was "purportedly governed by an Amended Operating Agreement dated February 16, 2007. But in fact, in their operation and management of CAREIC, Management generally disregarded the Operating Agreement and applicable state law," and did not follow the typical management procedure for LLCs. (Am. Compl. ¶ 32, ECF No. 150.)

CAREIC formed single-purpose or project-specific entities that were apparently designed to develop specific real estate projects or to take advantage of particular investment opportunities. For example, Castle Arch Smyrna, LLC (CAS), was formed to develop real property in Smyrna, Tennessee. Castle Arch Kingman, LLC (CAK), was formed in connection with the purchase and proposed development of land in Kingman, Arizona. CAREIC and its

---

Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 115; Mot. of Def. William H. Davidson to Compel Arbitration Pursuant to 9 U.S.C. § 4 & Utah Code § 78B-11-108; Stay the Case Pursuant to 9 U.S.C. § 3 & Utah Code § 78B-11-108; and to Dismiss Claims Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 111.

[2]The law requires the court to take the facts from the Amended Complaint and accept all of these well-pleaded facts as true for purposes of analyzing the Defendants' motions. Thomas v. Kaven, 765 F.3d 1183, 1190 (10th Cir. 2014).

special purpose entities are, collectively, the Debtors.

CAREIC, through the individual Defendants, raised over $73 million from investors. According to the Trustee, they raised that money by fraudulently telling investors that the money "would be used prudently to acquire, entitle, and develop real estate." (Id. ¶ 2.) Rather than acting prudently, the Defendants "recklessly invested in raw land" and "pursued projects long after they knew, or should have known, these projects were either completely infeasible or so high risk that a prudent real estate developer would never have pursued them." (Id. ¶¶ 3, 6.) The Trustee further alleges that the Defendants "brought no value to the Debtors' investors, and that the entire CAREIC operation was merely a scheme to generate personal salaries and other compensation for [the Defendants], at investors' expense." (Id. ¶ 6.)

The Defendants' Roles at CAREIC

In the Amended Complaint, the Trustee categorizes three of the individual Defendants—Robert Geringer (who has not filed a motion to dismiss), Jeff Austin, and Robert Clawson—as CAREIC's "Officers." (Id. ¶ 28.) Those Officers, along with Defendant William Davidson, are referred to in the complaint as the "Board," the "Directors," or "Management." (Id.) The Amended Complaint also outlines the individual Defendants' personal involvement in CAREIC.

For instance, Mr. Austin was CAREIC's Senior Vice President of Business Development and a member of the Board of Directors.

> As Senior Vice President of Business Development, Austin was the person principally responsible for the Debtors' capital-raising activities, comprised of selling securities to the public through unlicensed broker-dealers by means of material misstatements and omissions. Austin had authority over the Debtors' sales materials (including the PPMs [private placement memoranda]) and its sales

force.

(Id. ¶ 22.)  Beginning in November 2010, Mr. Austin served as CAREIC's CEO.  "As CEO,

Austin had general charge of the business, affairs, and property of the Debtors and general

supervision over its officers, employees, and agents."  (Id.)  But "Austin was not registered with

the Securities & Exchange Commission ('SEC') or any relevant state authority as a broker-dealer

or as being associated with a broker-dealer firm that was registered with the SEC."  (Id.)

Mr. Davidson became a member of CAREIC's Board of Directors in January 2006 and

served as Chairman of the Board from May 2007 to November 2010.  "He acted as Chair at

CAREIC's Board meetings, developed and set the agendas for meetings of the Board, and was

charged with ultimate oversight of management."  (Id. ¶ 24.)  He was also a member of

CAREIC's Audit, Compensation, and Governance & Compliance Committees.

Mr. Clawson was CAREIC's Managing Director of Business Development and a de

factor officer and member of CAREIC's Board from 2004 to 2011.  According to the Amended

Complaint,

> Clawson was denied a formal title and his participation in the Company (at Board
> meetings and in drafting and structuring PPMs and other sales materials) was not
> disclosed in CAREIC's PPMs or its public filings because Clawson has been,
> since at least 2003, barred by the SEC from functioning as a promoter, finder,
> consultant, agent, or other person who engages in activities with a broker, dealer,
> or issuer for purposes of the issuance or trading in any penny stock, or inducing or
> attempting to induce the purchase or sale of any penny stock.

(Id. ¶ 25.)

The Private Placement Memoranda

The Defendants raised money through the sale of securities offered in Private Placement

Memoranda (PPMs).  The Trustee, in his securities fraud claims, focuses on three PPMs—one

for CAREIC securities, and two for securities of CAREIC's special purpose entities—each of which, he alleges, contained material misrepresentations and omissions.

First, Management offered and sold investors approximately $38.4 million in CAREIC securities (Series A, B, C, D, and E). Of those five offerings, the complaint focuses on the PPM related to CAREIC's $7.1 million Series E offering (CAREIC Series E PPM).

In the second set of offerings, Management sold securities of the single-purpose or project-specific entities. The PPMs at issue in this category are (1) the June 25, 2007 CAS PPM, through which Management raised $4.1 million, and (2) the February 1, 2008 CASDF PPM, through which Management raised $8.4 million.

For each of the three, the Trustee enumerates the Management Defendants' personal involvement in the offerings, including drafting, revising, and approving the PPMs. (See, e.g., id. ¶¶ 198–207.) He lays out their use of the securities offerings, through the PPMs, as well:

> The Management Defendants authorized the Debtors to use the Relevant PPMs to solicit investment from the investors who invested in CAREIC, CAS, and CASDF. The Management Defendants, or other sales representatives of Debtors, provided each investor with the PPM for the security invested in. The Debtors required investors in the Relevant Securities Offerings to attest that the offer to sell they had received was made through the Relevant PPMs. All of the investors who assigned their claims to the Trustee received a copy of the Relevant PPM in connection with the offer and sale of securities they purchased.

(Id. ¶ 208.) Lastly, the Trustee lists a multitude of material omissions in each of the relevant PPMs. (See id. ¶¶ 209–47.)

Through those PPMs, the Defendants raised a significant amount of money for CAREIC and its special purpose entities (i.e., the Debtors). But because of the Defendants' purported self-dealing and reckless management, the Debtors ultimately suffered significant losses.

## PROCEDURAL BACKGROUND

In October 2011, a state-appointed receiver filed Chapter 11 bankruptcy petitions for CAREIC and its related entities in the District of Utah. In May 2012, the bankruptcy court appointed Mr. Strong as the Chapter 11 Trustee for CAREIC. After the bankruptcy court issued its 2013 Confirmation Order and confirmed the Trustee's Plan of Liquidation, the Trustee pursued this litigation in his capacity as the post-confirmation estate representative and liquidating trustee of trusts formed during the bankruptcy proceedings. In that capacity, he entered into a series of tolling agreements with the Defendants. Then, on October 30, 2014, he filed a complaint asserting claims against the former managers and board members, as well as entities associated with those individuals. According to the Trustee, this case was brought "to recover the tens of millions of dollars that investors and creditors have lost because of the Defendants' unlawful and fraudulent conduct and operation of the Debtors." (Am. Compl. ¶ 1.)

The Trustee originally asserted nineteen claims against the Defendants: a claim for breach of a fiduciary duty, seven fraud-based claims based on state and federal law (including securities laws, civil conspiracy, and a state RICO claim), eight claims seeking avoidance of fraudulent transfers, one claim for disallowance of bankruptcy claims, and two claims in equity (constructive trust and unjust enrichment). In 2015, the case was referred to arbitration, which ultimately failed for procedural reasons. (See May 9, 2017 Order & Mem. Decision at 1–3, ECF No. 151.)

After the case returned to this court, some of the Defendants filed the motions now before the court. Those Defendants are the "Austin Defendants" (Jeff Austin and Austin Capital

Solutions[3]), the "Clawson Defendants" (Robert Clawson and Hybrid Adviser Group[4]), and William H. Davidson. On the heels of those motions, the Trustee filed a motion to amend his complaint (see ECF No. 118), which the court granted while the parties were in the process of briefing the motions to dismiss. (See May 4, 2017 Order & Mem. Decision, ECF No. 147.)

In the Amended Complaint, the Trustee dropped some claims and reduced his complaint to the following nine claims: breach of fiduciary duty, violation of state securities laws, violation of state RICO laws, civil conspiracy, disallowance of claims and subordination under bankruptcy law, unjust enrichment, constructive trust, and a new claim against Jeff Austin based on his alleged sale of securities without a license.[5] By doing so, the Trustee essentially voluntarily dismissed his claims for federal securities fraud, federal control person liability, common-law fraud, negligent misrepresentation, and fraudulent transfer. Consequently, the issues the Defendants raise about those claims are moot.

With some claims gone, the Trustee filed an opposition (ECF No. 126) that only addressed the remaining claims and relied on the new set of allegations to defend against the motions to dismiss. The Defendants filed their reply memoranda in response to the Trustee's streamlined opposition and addressed the new and revised factual allegations. Given that the newly amended complaint was approved mid-stream in the briefing process, the court analyzes

---

[3]The Trustee named Austin Capital Solutions (a company solely owned and managed by Mr. Austin) as a defendant because it received funds from the Debtors.

[4]The Trustee named Mr. Clawson's company Hybrid Advisor Group as a defendant because it received funds from the Debtors.

[5]In that new claim, listed as the Third Claim for Relief (see Am. Compl. ¶¶ 283–87), the Trustee seeks recovery of investors' money based on the allegation that Mr. Austin recklessly or intentionally sold securities without a license. (Id.) That claim is not at issue in these motions.

the motions to dismiss in light of the revised set of allegations.

## ANALYSIS

The Defendants target the Trustee's claims for breach of fiduciary duty, violation of state securities laws, civil conspiracy,[6] unjust enrichment, and constructive trust.[7]  In their motions, they assert that the claims are time-barred, the Trustee has not pleaded the existence of a fiduciary duty, the fiduciary duty and securities fraud claims have not been pleaded with the specificity required by Federal Rules of Civil Procedure 8(a)(2) and 9(b), and the Trustee's claims for equitable relief are barred because the Trustee has an adequate legal remedy.

### Standard of Review

"At the motion-to-dismiss stage, [the court] must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Thomas v. Kaven, 765 F.3d 1183, 1190 (10th Cir. 2014) (internal citation and quotation marks omitted).  To withstand a motion to dismiss, the Trustee need only show that the allegations in the Amended Complaint "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

### Statute of Limitations

The Defendants contend that the Trustee's claims are barred by the applicable statutes of limitations.  But for the reasons set forth below, the issues they present to the court may not be

---

[6]Because the validity of the civil conspiracy claim is tied to the validity of the claims upon which it is based, the court will not address it separately.

[7]The state RICO claims are stayed and are not subject to the motions to dismiss.  The same is true for the Trustee's claims against Defendant William Davidson that concern the Series E investors.

resolved at the motion-to-dismiss stage.

The Defendants' arguments necessarily focus on the question of when the Trustee's claims began to accrue. In their motions, they discuss tolling agreements and related correspondence, none of which were referenced in, or attached to, the Trustee's original complaint or Amended Complaint. They also present evidence and argument about when the Trustee should have discovered the existence of, for example, the fraud-based claims. But those questions are factual in nature. Resolving them would require the court to question the truth of the allegations and to look at materials beyond the pleadings, something the court may not do when resolving a Rule 12(b)(6) motion.[8] See also Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1042 (10th Cir. 1980) ("The question of whether a plaintiff should have discovered the basis of his suit under the doctrine of equitable tolling does not lend itself to determination as a matter of law.").

The Austin Defendants attempt to circumvent that rule (at least for the Trustee's California securities law claim) by relying on a California state court decision imposing heightened pleading requirements on a plaintiff who intends to rely on the discovery rule to avoid a time-bar. Citing to Fox v. Ethicon Endo-Surgery, Inc., 110 P.3d 914 (Cal. 2005), the Austin

---

[8]Typically, when analyzing a motion to dismiss under Rule 12(b)(6), the court may only consider all well-pleaded allegations in the complaint. Alvarado v. KOB-TC, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007). An exception to this rule allows the court to consider documents outside the complaint, but only if they (a) are judicially noticed or (b) are referred to in the complaint, are central to the plaintiff's complaint, and their authenticity is not challenged. Id. As noted above, the documents are not incorporated into the Amended Complaint. And, although the Clawson Defendants ask the court to judicially notice a plethora of documents (see ECF No. 116), the court declines to do so for the reasons set forth in the Trustee's memorandum in opposition to the request (ECF No. 128).

Defendants contend that the Trustee's pleading of the California securities law claim is insufficient to avoid dismissal based on the statute of limitations. In Fox, the California Supreme Court held that "[i]n order to rely on the discovery rule for delayed accrual of a cause of action . . . [a plaintiff] must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. . . . [C]onclusory allegations will not withstand demurrer." Id. at 921 (emphasis in original). The pleading rule announced in Fox does not apply in federal court for two related reasons.

First, it is well established that "[u]nder the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996); see also Jones v. UPS, 674 F.3d 1187, 1195 (10th Cir. 2012) (in diversity cases, federal law controls procedural questions). In other words, "under standard Erie doctrine, state pleading requirements, so far as they are concerned with the degree of detail to be alleged, are irrelevant in federal court even as to claims arising under state law." Andresen v. Diorio, 349 F.3d 8, 17 (1st Cir. 2003) (emphasis added); see also The Bradbury Co., Inc. v. Teissier-Ducros, 387 F. Supp. 2d 1167, 1173 (D. Kan. 2005) (rejecting defendants' reliance on state law to determine whether a state-law claim satisfied Rule 8 pleading standards) (quoting Andresen, 349 F.3d at 17). Accordingly, even when state law determines the accrual date for a claim under California's securities law, federal law provides the legal standard to determine whether the Defendants are entitled to dismissal under Rule 12(b)(6).[9] "Though

_____

[9]Federal courts in California have held that the pleading rule in Fox does not apply in a federal forum. See Yamada v. Nobel Biocare Holding, AG, No. 2:10-cv-04849-JHN-PLAx, 2011 WL 13128155, *3 n.3 (C.D. Cal. Jan. 20, 2011) (analyzing motion to dismiss based on the same California securities law statute of limitations, and rejecting the Fox pleading rule because

California law will ultimately determine whether Plaintiff's [securities fraud] claims are time-barred, the decision whether <u>dismissal</u> [for insufficient allegations] is appropriate on that basis is governed by federal law." <u>Yamada v. Nobel Biocare Holding, AG</u>, No. 2:10-cv-04849-JHN-PLAx, 2011 WL 13128155, *3 n.3 (C.D. Cal. Jan. 20, 2011) (emphasis in original); <u>see also</u> <u>Lesti v. Wells Fargo Bank, N.A.</u>, 960 F. Supp. 2d 1311, 1320 (M.D. Fla. 2013) ("Florida law will determine when the applicable statute of limitations begins to run, but federal law will provide the legal standard to determine if defendants are entitled to dismissal.").

Second, expiration of the statute of limitations is an affirmative defense, and the Trustee does not have the burden to plead compliance with the statute of limitations.[10]  <u>See</u> <u>Gomez v. Toledo</u>, 446 U.S. 635, 640 (1980) (a plaintiff is not required to plead circumstances countering a defendant's affirmative defense); <u>Youren v. Tintic Sch. Dist.</u>, 343 F.3d 1296, 1303 (10th Cir. 2003) (expiration of the statute of limitations is an affirmative defense to be pleaded by the person raising it); <u>Stewart v. Int'l Ass'n of Machinists & Aerospace Workers</u>, 16 F. Supp. 3d 783, 794 (S.D. Tex. 2014) ("Under federal law, which governs the pleading requirements of a case in federal court, the statute of limitations is an affirmative defense, and the burden of proof

---

"pleading requirements for a diversity case in federal court are governed by federal procedural law, not by state law."); <u>Beaver v. Tarsadia Hotel</u>, No. 11-cv-1842 DMS (CAB), 2011 WL 6098165, *8 (S.D. Cal. Dec. 6 2011) (in federal diversity case, court declined to apply the <u>Fox</u> pleading rule to a claim challenged under a statute-of-limitations defense).

[10]Certainly a federal court may evaluate whether dates of events pleaded in the complaint indicate on the complaint's face that a claim is time-barred.  <u>See</u> <u>Aldrich</u>, 627 F.2d at 1041 n.4 ("While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute.").  But that situation does not exist here because the Defendants do not identify allegations in the complaint that, on their own, would permit dismissal based on the statute of limitations.

is on the party pleading it.  Therefore, a plaintiff is not required to allege that his claims were within the applicable statute of limitations.") (internal citations and quotation marks omitted). The court may not hold the Trustee to a rule requiring him to preemptively raise the statute of limitations in his complaint or otherwise affirmatively plead circumstances in anticipation of a statute of limitations defense.

For the reasons set forth above, the court denies the motion to dismiss on the basis that the Trustee's claims are time-barred.

**Breach of Fiduciary Duty**

The Defendants assert that the Amended Complaint does not allege the existence of a fiduciary duty, much less the breach of any such duty.  First, they say that in their official roles as limited members of the LLC, they did not, as a matter of law, owe a fiduciary duty to CAREIC.  Second, they contend that the Trustee's allegations, particularly given his use of group pleading, are insufficient to satisfy the pleading requirements of Rule 8.

1.      Existence of a Fiduciary Duty

According to the Defendants, they did not owe any fiduciary duty to CAREIC because they were only limited members of the LLC.  Indeed, California law (which apparently governs CAREIC, a California LLC) does state that a limited member does not owe a fiduciary duty to the LLC.  The Defendants further point to language in the Amended Operating Agreement, which only imposed management responsibilities on the Chief Executive Officer, and, if designated by the CEO, the President, Secretary, or Treasurer.  All of the Defendants held titles,

but none of those titles were managing member, CEO, President, Secretary, or Treasurer.[11]

The Trustee agrees with the general legal principles cited by the Defendants. But he responds that the Defendants operated outside the parameters of the Amended Operating Agreement and actually participated (despite any nominal title, or lack of title) in the management of CAREIC. By doing so, the Trustee maintains, each of the individual Defendants took on, and accordingly owed, a fiduciary duty as a matter of fact.

California courts have applied such a "fiduciary duty in fact" concept. Under that approach, an individual, regardless of title, owes a fiduciary duty to a company when the individual "participates in management of the corporation" and "exercis[es] some discretionary authority." GAB Bus. Servs., Inc. v. Newsom Claim Servs., Inc., 99 Cal. Rptr. 2d 665, 672 (Cal. Ct. App. 2000), overruled in part on other grounds by Reeves v. Hanlon, 95 P.3d 513 (Cal. 2004).[12]

> While a limited partner normally would not be involved in the management or otherwise participate in the partnership . . . so as to incur fiduciary obligations to other partners, we believe there can be factual scenarios where a limited partner might be involved in the partnership in such a manner . . . so as to create fiduciary duties.

Tri-Growth Centre City, Ltd. v. Silldorf, Burdman, Duignan & Eisenberg, 265 Cal. Rptr. 330, 335 (Cal. Ct. App. 1989) (emphasis added) (leaving for resolution at trial the factual issue of

---

[11]The one exception is Mr. Austin, who was appointed as the CEO in November 2010. He does not dispute that he had a fiduciary duty during his term as the CEO, but he argues that before that appointment, his role at CAREIC did not create a fiduciary duty.

[12]In Reeves, the Supreme Court of California rejected a holding in GAB completely unrelated to the fiduciary duty proposition for which GAB is cited in this order. "We disapprove [GAB] . . . to the extent it conflicts with the views expressed" in the Reeves opinion concerning the plaintiff's claim for intentional interference with at-will employment relations. 95 P.3d 513, 521 (Cal. 2004).

whether a fiduciary duty in fact existed); see also Mission W. Props., L.P. v. Republic Props. Corp., 129 Cal. Rptr. 3d 14, 22 n.8 (Cal. Ct. App. 2011) (holding that, notwithstanding the California statutory law and the limited partnership agreement, a limited partner may have a fiduciary duty if he engages in management of the company) (citing Tri-Growth).

The Trustee rightfully insists that "[t]he Moving Defendants cannot hide behind the CAREIC Operating Agreement to claim that they did not owe a fiduciary duty to CAREIC or its investors. The realities of how a company is operated govern rather than its formal structure." (Combined Opp'n at 12, ECF No. 126.) The Amended Complaint alleges actual circumstances, not typical circumstances, and that is adequate under California law.

## 2.    Sufficiency of the Allegations

The Defendants also challenge the complaint on the basis that it uses "group pleading" and, consequently, does not provide sufficient notice to the Defendants about what they allegedly did wrong. The court disagrees and finds that the Amended Complaint sufficiently alleges that all of the Defendants participated in the management of CAREIC and were more than nominal officers or directors. Although the complaint often uses terms that refer to a group—i.e., "Officers," "Board," "Directors," or "Management"—it provides adequate notice under Rule 8.

To adequately plead a cause of action under Rule 8, the plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Essentially, "the [complaint] need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks and citations omitted), quoted in Smith v. United States, 561 F.3d 1090, 1104 (10th Cir. 2009). Importantly, "the degree of specificity necessary to establish

14

plausibility and fair notice, and therefore the need to include sufficient factual allegations,

depends on context[.]" <u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1248 (10th Cir. 2008). The

Amended Complaint provides ample context within which to interpret the Trustee's group

allegations.

The Trustee defines the four terms in the Amended Complaint: "Defendants Geringer,

Austin, and Clawson are referred collectively herein as the '<u>Officers</u>.' The Officers, together

with Davidson, are referred herein as the '<u>Board</u>,' the '<u>Directors</u>,' or '<u>Management</u>.'" (Am.

Compl. ¶ 28 (emphasis in original).) His use of the terms is simply a shorthand for the individual

Defendants, who he asserts had the power and ability to direct the management and policies of

CAREIC. (<u>See, e.g.</u>, <u>id.</u> ¶¶ 31, 35, 37, 38.) As counsel for the Trustee noted at the hearing, he

could have used a "find and replace" command in the word processing program to list each

person's name in place of the single term. But that is not necessary, and, frankly, would be

cumbersome.[13]

Moreover, the complaint lays out the management responsibilities of the Board. In

particular, the Trustee alleges that:

> [t]he Board and each of its members had the power and ability to direct the
> management and policies of CAREIC and the other Debtors. . . . For instance, the
> Board has the power, among other things, to declare dividends, adopt
> compensation plans for Management, admit and expel new members, accept
> capital contributions, determine the voting and other rights of shares, increase the
> Company's debt, authorize company Officers to bind and obligate the Company,

---

[13]<u>See</u> <u>FDIC v. Borowski</u>, No. 16 C 6250, 2016 WL 7188166, *3 (N.D. Ill. Dec. 12, 2016)
(finding that FDIC's complaint which "group[ed] multiple defendants and combin[ed] 'ten
separate transactions into single causes of action'" provided fair notice to defendants and that,
"with six Defendants, ten underlying transactions, and three causes of action, the [complaint's
structure was] an attempt at succinctness.").

select and control bank accounts, and to determine the accounting policies of the Company.

(Id. ¶ 35.)  Another paragraph cites to minutes from Board of Director meetings and provides specific examples of how members of the Board actually "controlled, managed, and directed CAREIC."  (Id. ¶ 37.)

And the Amended Complaint gives specific examples of each individual Defendant's involvement.  For instance, Mr. Davidson allegedly "advised concerning the content of Debtors' PPMs, . . . was directly involved in selling Debtor securities to Chinese investors, . . . and was required to review and approve all hard commitments before a project could be presented to the Board for final approval."  (Id. ¶ 40; see also ¶ 138.)  Mr. Austin "directed and managed the Debtors' fundraising activities, [and] determined the amount, timing, and structure of the Debtors' securities offerings[.]" (Id. ¶ 44; see also ¶¶ 173–75, 186–92.)  Mr. Clawson was "the designer of CASDF and its PPM . . . .[,] was a key member of the CAREIC sales team[, and] was deeply involved in the solicitation of investors using the CASDF, CAREIC, and other offering documents."  (Id. ¶ 45; see also ¶ 168.)

The Amended Complaint then provides approximately 140 paragraphs detailing specific breaches of fiduciary duties.  The Trustee discusses three real estate projects, and alleges inadequate board oversight, lack of officer diligence, lack of internal control and reporting procedures, and reckless spending of investor funds (each of which is supported by very specific examples).  (See id. ¶¶ 48–157.)  Some paragraphs directly name the individuals.  Some discuss actions that would have necessarily been conducted by the Board as a whole.  For example, the Trustee refers to issuance of company documents such as the CAK PPM, Kingman Pro Forma,

the Series B PPM, and the Tooele Pro Forma. (See id. ¶¶ 52–60, 85–94.) Group pleading is especially well-suited to that situation. As the Tenth Circuit held in the more stringent Rule 9(b) context, "[i]dentifying the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group-published documents such as annual reports, which presumably involve collective actions of corporate directors or officers." Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1254 (10th Cir. 1997). See also Medina v. Catholic Health Initiatives, No. 1:13-cv-01249-REB-KLM, 2017 WL 219314, *3 (D. Colo. Jan. 17, 2017) (group pleading was sufficient when the act taken was that of a committee, because it is reasonable to infer that the committee acted "through the actions or omissions of its individual constituent members").

In short, the Amended Complaint more than satisfies Rule 8.[14]

## State Securities Law Claims

The Trustee alleges that the Defendants violated the securities laws of Utah, California, and Nevada by making material misstatements or omissions in connection with sales of securities in those states. The Defendants contend that those claims, which are fraud-based, must be dismissed because the Trustee has not met his pleading obligation under Rule 9(b) of the Federal Rules of Civil Procedure.

---

[14]Mr. Austin additionally asserts that even if a fiduciary duty is alleged for the time he was CAREIC's CEO, the allegations against him do not allege any breach of that duty or damages flowing from the alleged breach. (See Austin Defs.' Renewed & Expanded Mot. Dismiss at 10–14, ECF No. 12.) He focuses on the Trustee's allegations concerning the AXIS insurance policy. But the Amended Complaint is broader than that and lists other breaches of fiduciary duties that can be attributed to Mr. Austin. Accordingly, his argument does not provide a reason to dismiss the fiduciary duty claim.

When alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This standard "must be read in conjunction with the principles of Rule 8, which calls for pleadings to be 'simple, concise, and direct, and to be construed as to do substantial justice.'" Celestial Seasonings, 124 F.3d at 1252 (quoting Fed. R. Civ. P. 8(e), (f)). Indeed, "[t]he purpose of Rule 9(b) is to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based." Id. (quotations omitted).

Unlike the Trustee's abandoned federal securities law claims, the Trustee, to succeed on his state securities fraud claims, need not allege that an investor relied on a material misstatement,[15] that any defendant acted with a particular mental state (scienter),[16] or that any of the Defendants personally made the alleged misstatement or omission.[17] He is required to allege

_____

[15] See Gohler v. Wood, 919 P.2d 561, 563 (Utah 1999) (Utah Code Ann. §§ 61-1-1(2) and 61-1-22 "contain no requirement that a plaintiff prove reliance to recover."); Cutler v. Rancher Energy Grp., Case No. SACV 13-00906-DOC, 2014 WL 1153054, at *10 (C.D. Cal. Mar. 11, 2014) (unpublished) ("[Cal. Corp. Code §] 25401 differs from common law negligent misrepresentation in that . . . proof of reliance is not required"); see also Trinity Cap. Inv. Found. v. Kay, Case No. A592889, 2014 Nev. Dist. LEXIS 714, at *8-9 (D. Nev. May 16, 2014) (unpublished) (list of elements did not include reliance).

[16] Rather, the burden is on the defendant to establish the affirmative defense that he "exercised reasonable care and did not know (or if he had exercised reasonable case would not have known) of the untruth or omission." Cal. Corp. Code § 25501; see also Utah Code Ann. §§ 61-1-22(3) and 61-1-22(1)(b); Nev. Rev. Stat. § 90.660; Bowden v. Robinson, 136 Cal. Rptr. 871, 878 (Cal. Ct. App. 1977).

[17] The state securities statutes impose joint and several liability on officers and directors of a seller of securities and other individuals similarly situated. They cut a wide swath, imposing liability on one who offers or sells a security in violation of the relevant statute as well as "[e]very person who directly or indirectly controls a seller . . . every partner, officer, or director of such a seller . . . every person occupying a similar status or performing similar functions, every employee of such a seller . . . who materially aids in the sale . . . and every broker-dealer or agent who materially aids in the sale." Utah Code Ann. § 61-1-22(4)(a). See also Cal. Corp. Code

that in connection with the sale of a security in the relevant state, the Defendants made an untrue statement of a material fact or omitted to state a material fact. Utah Code Ann. §§ 61-1-1(2) and 61-1-22(1); Cal. Corp. Code §§ 25401 and 25501; Nev. Rev. Stat. §§ 90.570 and 90.660.

The Trustee has sufficiently pleaded all of the elements of the state securities fraud claims with the particularity required by Rule 9(b) and cases interpreting that rule. He lays out each omission and material misstatement from the PPMs in Paragraphs 209 to 247 of the Amended Complaint. Each of the misstatements and omissions was made in one of the relevant PPMs, which were used to solicit investments. See SEC v. Wolfson, 539 F.3d 1249, 1262 (10th Cir. 2008) (holding that when a document is designed to reach investors and to influence their decision to transact in securities, any misrepresentation in those documents is made "in connection with" the purchase or sale of a security."). The Trustee states the date of each PPM. And he alleges that the Defendants are officers, directors, or individuals similarly situated, of CAREIC. The Trustee adequately pleads the "who, what, where, and when" Rule 9(b) requires.

The Defendants raise the issue of group pleading, but that argument has no weight.[18] The Trustee goes beyond group pleading to allege the material misstatements, giving examples of each Defendant's participation in the drafting, dissemination, and use of the PPMs. And, as noted above in the section on fiduciary duty allegations, "group-published documents" such as the PPMs lend themselves well to group pleading. Celestial Seasonings, 124 F.3d at 1254

_____

§ 25504 (containing language substantially similar to Utah's statute); Nev. Rev. Stat. § 90.660.4 (same).

[18]The Trustee, in his combined opposition, further addresses other points raised by the Defendants in their motions. (See ECF No. 126 at 21–24.) For the reasons set forth in that opposition, the court finds that the Defendants' arguments identified by the Trustee do not support dismissal.

("Identifying the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group-published documents such as annual reports, which presumably involve collective actions of corporate directors or officers."); see also Ouaknine v. MacFarlane, 897 F.2d 75, 80 (2d Cir. 1990) ("[R]eference to an offering memorandum satisfies Rule 9(b)'s requirement of identifying time, place, speaker, and content of representation where . . . defendants are insiders or affiliates participating in the offer of securities."). Finally, the state securities statutes impose joint and several liability, so there is no need to allege that any particular Defendant personally made the material misstatement or omission. See supra note 17.

The Amended Complaint's allegations supporting the Trustee's state securities law claims satisfy the purpose of Rule 9(b), which is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based." Celestial Seasonings, 124 F.3d at 1252. Accordingly, the court will not dismiss those claims.

### Claims for Equitable Relief

In the Trustee's unjust enrichment and constructive trust claims (the Eighth and Ninth Claims for Relief), he seeks return of specifically identified transfers of money (the Transfers). (See Am. Compl. ¶¶ 248–51, 311–22.) The Defendants assert that the court must dismiss those equitable claims because the Trustee has not pleaded the lack of an adequately remedy at law. But the Trustee has done just that: "Absent return of the Transfers, the Trusts will be damaged by Defendants' unjust enrichment and may have no adequate remedy at law." (Id. ¶ 321.) Moreover, the Amended Complaint does not allege any other claim that would allow the Trustee to recover those transfers, and the Defendants do not identify any legal remedy available to the Trustee. Accordingly, the request to dismiss the Eighth and Ninth Claims is denied.

## ORDER

For the reasons set forth above, the court orders as follows:

1.      Defendants Austin and Austin Capital Solutions' Renewed and Expanded Motion to Dismiss (ECF No. 107) is DENIED.

2.      The Motion of Defendants Robert Clawson and Hybrid Advisor Group to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 115) is DENIED. The Clawson Defendants' Request for Judicial Notice (ECF No. 116) is DENIED.

3.      The Motion of Defendant William H. Davidson to Compel Arbitration Pursuant to 9 U.S.C. § 4 & Utah Code § 78B-11-108; Stay the Case Pursuant to 9 U.S.C. § 3 & Utah Code § 78B-11-108; and to Dismiss Claims Pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 111) is DENIED.[19]

DATED this 13th day of October, 2017.

BY THE COURT:

_Tena Campbell_

TENA CAMPBELL
U.S. District Court Judge

---

[19]In May 2017, the court denied Mr. Davidson's request to compel arbitration (the request was part of the motion to dismiss that the court now denies).  (See May 9, 2017 Order & Mem. Decision, ECF No. 151.)  Mr. Davidson appealed that decision to the Tenth Circuit Court of Appeals.  (See May 22, 2017 Notice of Appeal, ECF No. 158.)  As a result, the court lost jurisdiction over certain claims against Mr. Davidson and granted a stay of those claims pending a decision on the appeal.  (See June 23, 2017 Minute Entry, ECF No. 174; Aug. 3, 2017 Order Granting Stipulated Stay, ECF No. 185 ("Proceedings against Davidson are stayed regarding all claims the Trustee has acquired from CAREIC Series E investors.  This includes the Second and Fourth Claims for Relief, to the extent they relate to CAREIC Series E investors.").)  Because the court's decision here maintains the status quo, this order does not affect the stay.