IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| D. RAY STRONG, as Liquidating Trustee of the Consolidated Legacy Debtors Liquidating Trust, the Castle Arch Opportunity Partners I, LLC Liquidating Trust, and the Castle Arch Opportunity Partners II, LLC Liquidating Trust, <br><br><br> Plaintiff, <br><br> vs. <br><br><br> KIRBY D. COCHRAN; JEFF AUSTIN; AUSTIN CAPITAL SOLUTIONS; WILLIAM H. DAVIDSON; ROBERT CLAWSON; HYBRID ADVISOR GROUP; ROBERT D. GERINGER, ROBERT D. GERINGER, P.C.; FINE ARTS ENTERTAINMENT; and DOES 1-50, <br><br> Defendants. | ORDER AND MEMORANDUM OF DECISION <br><br><br> Case No. 2:14-cv-00788-TC-EJF |

On September 23, 2019, the court ruled on two motions for partial summary judgment, one from Plaintiff D. Ray Strong and one from Defendant Robert Geringer. Strong v. Cochran, Case No. 2:14-cv-00788-TC-EJF, 2019 WL 4601636 (D. Utah Sept. 23, 2019). Mr. Geringer and Defendants Jeff Austin and William Davidson now ask the court to either clarify or

reconsider that order. (ECF Nos. 346, 347, 349, 350.) Mr. Geringer has also filed a motion for additional discovery under Rule 56(d). (ECF No. 367.)

Mr. Strong contends that that there is nothing to reconsider or clarify from the order. Instead, he moves for the court to bifurcate trial so that the few triable issues of fact remaining for his second cause of action can be resolved. (ECF No. 337.)[1]

For the reasons stated below, the motions for clarification and reconsideration are granted in part and denied in part. The motion for additional discovery and the motion to bifurcate trial are both denied.

## I.    Clarification

### A.    Mr. Strong's Motion for Summary Judgment

On March 13, 2018, Mr. Strong moved for summary judgment on his second claim for breach of certain state securities laws. (ECF No. 221.) In ruling on the motion, the court reached the following conclusions:

> 1. California law applies to Mr. Strong's claims. Triable issues of fact exist about whether Utah law also applies.
>
> 2. CAREIC violated California's securities fraud statute when it failed to disclose Mr. Clawson's past SEC violations in the CAS, CASDF, and Series E PPMs. Triable issues of fact exist about whether [the] other misrepresentation or omissions violated California's securities fraud statute.
>
> 3. Mr. Austin, Mr. Clawson, Mr. Davidson, and Mr. Geringer are all liable for the failure to disclose Mr. Clawson's past, because (a) they are all directors of, or filled similar roles with, CAREIC; (b) privity is not required to establish liability;

---

[1] On October 16, 2019, the court granted the request of Brett Evans and Wesley Felix to withdraw as counsel for Defendants Robert Clawson and Hybrid Advisor Group ("Hybrid"). (ECF No. 345.) The case was stayed for twenty-one days to allow Mr. Clawson and Hybrid to obtain new counsel. (Id.) As of December 20, 2019, Mr. Clawson and Hybrid have still not obtained new counsel, and neither Mr. Clawson nor Hybrid filed any briefs regarding the motions for clarification or reconsideration. Nevertheless, at the hearing, Mr. Clawson did provide the court and all other parties with an opposition to the motion to bifurcate trial. The court has reviewed that opposition and has taken it into consideration in its ruling here.

and (c) there are no triable issues of fact about whether they reasonably should have been aware of Mr. Clawson's past.

4. Although Mr. Strong has shown that Defendants are liable for at least one omission in their securities offerings, triable issues of material fact remain regarding whether claims arising from these securities offerings are barred by the statute of limitations.

Strong, 2019 WL 4601636 at *20. Because of this last issue, the court denied the motion.

Defendants[2] now ask the court to clarify that only this final conclusion—that questions of fact exist regarding the statute of limitations—is binding going forward. (Def.'s Mot. Clarify at 2 (ECF No. 347).) They contend that all of the court's other conclusions should be treated as dicta, rather than as the law of the case. In other words, Defendants maintain that the applicability of California law, the materiality of Mr. Clawson's prior SEC violations, Defendants' roles as directors of CAREIC, and Defendants' knowledge of Mr. Clawson's prior SEC violations all remain disputed issues to be raised at trial.

That was not the court's intent. To the extent the court was unclear before, the court now clarifies that each of the conclusions listed above are binding for purposes of this litigation.[3] See Fed. R. Civ. P. 56(g) ("If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case.").

Defendants claimed, both in their motions and at the hearing, that they had no notice that the court was going to enter an order that addressed issues beyond their statute of limitations defense. They suggest that their oppositions to Mr. Strong's motion would have been handled

---

[2] Because Mr. Geringer, Mr. Austin, and Mr. Davidson all take the same positions in their respective motions, the court does not distinguish between them in discussing their arguments.
[3] Although the court now clarifies that it intended for these conclusions to be the law of the case, it also reconsiders one of these conclusions below.

differently had they known what was actually at stake. (See Def.'s Mot. Clarify at 4 ("Had he been alerted to the possibility that the Court might enter such binding determinations on specific issues, Mr. Geringer could and would have responded to the motion in a different manner, rather than strategically rely[ing] on selective evidence and affirmative defenses to defeat the motion as a whole.").) Defendants note that the official comment to Rule 56(g) specifically cautions courts against issuing orders that disregard the tactical choices of nonmoving parties:

> [Under] Subdivision (g) . . . the court may decide whether to apply the summary-judgment standard to dispose of a material fact that is not genuinely in dispute. The court must take care that this determination does not interfere with a party's ability to accept a fact for purposes of the motion only. A nonmovant, for example, may feel confident that a genuine dispute as to one or a few facts will defeat the motion, and prefer to avoid the cost of detailed response to all facts stated by the movant. This position should be available without running the risk that the fact will be taken as established under subdivision (g) or otherwise found to have been accepted for other purposes.

Fed. R. Civ. P. 56(g), Advisory Committee's Note to 2010 Amendments.

This warning has little relevance here. Defendants did address every aspect of the second claim, thoroughly and at length. The claim that they lacked sufficient notice has no legitimate basis in fact. The court reviewed over 1,500 pages of briefs and evidence filed by Defendants in opposition to Mr. Strong's motion, as well as another 1,000 pages submitted in support of Mr. Geringer's own motion for summary judgment, which effectively served as an additional opposition. In those briefs, Defendants made specific arguments regarding every element of Mr. Strong's second cause of action. Defendants clearly foresaw that the summary judgment order could include conclusive findings on disputes other than the statute of limitations, and they responded accordingly.

A recent Seventh Circuit opinion, <u>Kreg Therapeutics, Inc. v. Vitalgo</u>, 919 F.3d 405 (7th Cir. 2019), is directly on point. There, the plaintiff moved for summary judgment on its entire breach of contract claim. <u>Id.</u> at 411. The district court "decided that . . . [the plaintiff] had established the first three elements of a breach of contract: the existence of a contract, its performance, and [the defendant's] breach. But it found [the plaintiff's] case lacking with respect to the fourth element: damages." <u>Id.</u> At a status conference the next month, the plaintiff indicated that, in its view, damages were the only unresolved issue remaining for trial. The defendant disagreed, arguing that because the court never cited Rule 56(g) in its order, "the issues of performance and breach should still be on the table." <u>Id.</u> at 412. The court "admitted that it should have cited Rule 56(g) in its first opinion, but it affirmed that its previous opinion established performance and breach as undisputed facts of the case." <u>Id.</u>

On appeal, the Seventh Circuit upheld the district court's order. "Rule 56(g) is ancillary to the ultimate summary-judgment analysis, operating to salvage some results from the time and resources spent in deciding unsuccessful summary-judgment motions. . . . The district court properly used the rule here." <u>Id.</u> at 415 (internal quotations omitted). While the Seventh Circuit acknowledged that the "best practice" would have been to specifically cite Rule 56(g) in the order, it nevertheless held that "the district court's opinion was clear enough and no one paying reasonable attention to the litigation after the first summary-judgment opinion could have thought [the plaintiff's] performance and [the defendant's] breach were still open questions." <u>Id.</u>

The same is true here. The motion put the entirety of Mr. Strong's second claim at issue. Defendants' understood this, as demonstrated by their thorough arguments in opposition to each element of that claim. The court's order clearly and conclusively ruled on most parts of the

claim, even though the motion as a whole was ultimately denied because of triable issues regarding the statute of limitations. "[N]o one paying reasonable attention" to the motion for summary judgment could doubt that these issues were properly before the court and had been definitively resolved. Id. Accordingly, the court's conclusions regarding Mr. Strong's partial motion for summary judgment are final and shall not be revisited at trial.

Closely related to the above, Defendants represent that they would have filed a request under Rule 56(d) to allow further discovery before the motion was heard, had they known how many issues the court was going to address.[4] In fact, in pursuit of this goal, Mr. Geringer has now filed a Rule 56(d) motion. (ECF No. 367.) He suggests that the court could revisit its order once Mr. Geringer has had an opportunity to conduct additional discovery and supplement his earlier opposition to the partial motion for summary judgment.

For the reasons already discussed, Defendants should have realized—and, based on their briefing, did in fact realize—that every element of the second claim was before the court. If Defendants believed additional discovery was necessary to oppose Mr. Strong's motion, they should have asked for that discovery before the court ruled on the motion.

In any event, at Defendants' request, multiple extensions to respond to Mr. Strong's motion for summary judgment were provided. (See ECF Nos. 233, 234, 240.) The motion was filed on March 13, 2018. Defendants opposition briefs were not filed until nearly four months later, between July 6 and July 8 (depending on the Defendant). (ECF Nos. 245, 248, 250.) Clearly, they could have engaged in discovery during that period. Moreover, the motions were

---

[4] Rule 56(d) states, "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

not heard by the court for another seven months.  (ECF No. 316.)  Again, Defendants could have conducted further discovery in that time and then asked for permission to supplement their briefs if needed.  This history further supports denying Mr. Geringer's very late request for additional discovery.

B.  <u>Mr. Geringer's Motion for Summary Judgment</u>

Mr. Geringer's motion for partial summary judgment was based on his statute of limitations affirmative defense.  The court denied the motion on the first, eighth, and ninth claims, and granted it in part and denied it in part on the second and fourth claims.  <u>Strong</u>, 2019 WL 4601636 at *31.

In general, the discussion above regarding Mr. Strong's motion applies equally here.  Where the court fully resolved certain issues (even without fully resolving an entire cause of action or affirmative defense), the court's conclusions are the law of the case and will not be revisited at trial.

That said, the court does clarify two aspects of its previous order.

1.  Calculating the Statute of Limitations

First, Defendants complain that for Mr. Strong's first, eighth, and ninth causes of action, the court's order summarily concludes that "the claims are timely."  <u>Id.</u> at *25.  Defendants ask whether that means their statute of limitations affirmative defense is completely foreclosed for those claims.

Reading the opinion in context, that was clearly not the court's intent.  The order actually states:

> Mr. Geringer argues that all three claims are subject to a four-year statute of limitations.[24]  He then argues that the first claim accrued, at the latest, upon his

resignation from CAREIC on July 9, 2009, and that the eighth and ninth claims accrued, at the latest, when the final investment occurred on May 5, 2009.[25]

Using Mr. Geringer's dates, the court concludes the claims are timely.

_____

[24] Mr. Geringer reserves the right to assert that some of the claims are actually subject to a three-year statute of limitations at trial but does not contest this issue for purposes of this motion. (See ECF No. 244 at 19.)

[25] Again, Mr. Geringer reserves the right to argue at trial that these claims may have accrued earlier but does not press the issue here. (See ECF No. 244 at 20 n.6.)

Id. at *25 n.24, 25.

These two footnotes explicitly acknowledged that Mr. Geringer had the right to advance different date calculations at trial. Mr. Geringer presented a narrow statute of limitations defense in his motion, in an effort to prevail at summary judgment, and the court rejected it. Clearly, when the order indicates that "the claims are timely," it is referring only to the one argument that Mr. Geringer placed before the court; it is not addressing whether the claims are timely under any other theory of the statute of limitations that Mr. Geringer might pursue later.

2. Investor's Notice of Securities Fraud

Second, in determining whether the CAREIC investors had notice of the Defendants' securities violations, the court's order stated: "Mr. Geringer does not submit evidence that any of the investors had actual knowledge of the alleged fraud. Instead, he argues that a reasonable investor would have been on inquiry notice regarding the alleged fraud more than two years before October 14, 2013." Id. at *27. The court then held that there were triable issues of fact regarding when a reasonable investor would have had inquiry notice of the fraud.

Mr. Strong has now filed a motion in which he asks for a separate trial on just the issue of reasonable inquiry notice. (Pl.'s Mot. Bifurcate Trial at 3 (ECF No. 337).) He interprets the above language to mean that Mr. Geringer has waived any argument regarding actual notice, and so maintains that if he prevails on the issue of reasonable notice, the second claim will have been fully resolved in his favor.[5]

Defendants believe that Mr. Strong's position mischaracterizes the court's summary judgment order, and so ask the court to clarify what it meant. The court agrees with Defendants that Mr. Strong's reading of the order is incorrect. The language excerpted above was merely meant to emphasize that Mr. Geringer chose to focus on reasonable inquiry notice, rather than actual notice, as the sole basis for seeking summary judgment. But that does not mean that Mr. Geringer has waived his right to prove at trial that certain investors had actual notice of the fraud. To be clear, both actual notice and reasonable notice remain as live issues for trial.

Mr. Strong cites no authority for the proposition that Mr. Geringer could waive his affirmative defense by not including it in his own motion for summary judgment, and the court is aware of none. Instead, Mr. Strong contends that Mr. Geringer waived the actual notice defense when he failed to raise it in opposition to Mr. Strong's motion for summary judgment.

The court disagrees. The cases cited by Mr. Strong in support of this proposition show only that Defendants' affirmative defenses would have been waived had Mr. Strong prevailed on his motion. But it was Defendants, not Mr. Strong, that prevailed on that motion, at least on the issue of the statute of limitations, so the cases Mr. Strong relies upon do not apply.

---

[5] Or, at least, that his California law claim will have been resolved. The second claim alternatively seeks relief under Arizona, Nevada, and Utah law but Mr. Strong does not seek to proceed with a trial on those claims at this time.

For example, in <u>Pantry, Inc. v. Stop-N-Go Foods, Inc.</u>, 796 F. Supp. 1164 (S.D. Ind. 1992), the plaintiff moved for summary judgment on the issue of liability, and the defendant failed to raise triable issues of fact in opposition.  Nevertheless, after the motion was granted in the plaintiff's favor, the defendant asked the court to clarify whether the defendant could still go to trial on its affirmative defenses.  The court held that the affirmative defenses were no longer viable, noting that "[t]his Court knows of no authority for holding that affirmative defenses are somehow latent and survive a partial summary judgment to be argued at trial—even though the complete issue of liability has been determined."  <u>Id.</u> at 1168; <u>see also</u> <u>Duarte Nusery, Inc. v. United States Army Corp of Eng'rs</u>, Case No. 2:13-cv-02095-KJM-DB, 2017 WL 3453206 at *3 (E.D. Cal. Aug. 11, 2017) (warning that courts should not "allow unargued affirmative defenses to lie dormant, waiting to unravel the court's prior dispositive liability decisions").  But here, the "complete issue of liability" has not been determined.  While the court has resolved certain aspects of Mr. Strong's claim in his favor, it has made no "dispositive . . . decision" regarding liability as a whole because triable issues remain regarding the statute of limitations affirmative defense.

Another case cited by Mr. Strong, <u>United Central Bank v. Wells Street Apartments, LLC</u>, 957 F. Supp. 2d 978 (E.D. Wis. 2013), is even more explicit: "If the defendant does not come forward with such evidence [of its affirmative defenses], <u>and the plaintiff otherwise shows that it is entitled to judgment as a matter of law on its claim</u>, then the affirmative defense is extinguished.  <u>Id.</u> at 988 (emphasis added); <u>accord</u> <u>TAS Distrib. Co. v. Cummins, Inc.</u>, Case No. 07-cv-1141, 2013 WL 12241129 at *3 (C.D. Ill. Feb. 1, 2013) ("When a plaintiff moves for summary judgment as to liability on a claim, the defendant is on notice that any arguments

against liability must be raised or the defendant will risk losing the claim <u>and</u> waiving the defenses.") (emphasis added). Here, Mr. Strong was unable to show that he was "entitled to judgment as a matter of law on [his] claim" precisely because Defendants were able to successfully defeat the motion by raising the statute of limitations defense. There is no apparent reason to penalize Defendants for making a successful defense by ruling that only that defense will be permitted at trial. In short, Defendants did not lose the claim, so they have not waived their defenses.

At the hearing, Mr. Strong disputed this reading of the cases. Citing to <u>United Central Bank</u> specifically, Mr. Strong noted that courts had found that affirmative defenses had been waived even when, as here, the nonmoving party was partially successful in defending against the motion for summary judgment. But the facts in <u>United Central Bank</u> are simply not analogous. In that action, the plaintiff sought to foreclose on three different mortgages. The plaintiff and the defendants filed cross-motions for summary judgment, arguing that all or none of the properties should be foreclosed upon. The court granted summary judgment for the defendants on the first mortgage and granted summary judgment for the plaintiff on the second and third mortgages. <u>See</u> <u>United Central Bank</u>, 957 F. Supp. 2d at 986. It also held that the defendants had waived any affirmative defenses they might have had, because the plaintiff had completely prevailed in showing that it was entitled to foreclose on the second and third mortgages and the defendants had failed to raise any triable issues of fact in response. <u>Id.</u> at 987-88.

It is true, as Mr. Strong points out, that this waiver rule applied even though the defendants had actually prevailed on a different aspect of the motion for summary judgment: the

foreclosure of the first mortgage. But that was an entirely separate claim. Their victory

regarding the first mortgage had nothing to do with their loss on the second and third mortgages.

Here, by contrast, Mr. Strong only moved for summary judgment on the second claim and

Defendants prevailed on that claim by asserting their statute of limitations affirmative defense. It

is this same claim for which Defendants seek to raise the actual notice affirmative defense. This

situation is simply not analogous to a case where the defendants prevailed on one claim but

entirely lost the two claims for which they wanted to preserve their affirmative defenses.

The official comment to Rule 56(g), discussed above, seems particularly applicable to

this situation:

> A nonmovant . . . may feel confident that a genuine dispute as to one or a few
> facts will defeat the motion, and prefer to avoid the cost of detailed response to all
> facts stated by the movant. This position should be available without running the
> risk that the fact will be taken as established under subdivision (g) or otherwise
> found to have been accepted for other purposes.

Fed. R. Civ. P. 56(g), Advisory Committee's Note to 2010 Amendments.

Defendants believed—correctly—that they could defeat Mr. Strong's motion for

summary judgment by invoking only the issue of reasonable notice. Their decision to focus on

reasonable notice at summary judgment does not mean that they cannot address actual notice at

trial.[6]

## II.    Reconsideration

Defendants also ask the court to reconsider three aspects of its summary judgment order:

1. whether the omission of information about Mr. Clawson from the PPMs
constituted a material omission and was a violation of the California securities
act;

---

[6] That Defendants are free to assert this defense at trial is a distinct issue from the question of how much discovery
they will be permitted to engage in to prepare this defense. That issue is addressed below.

2. whether [Defendants] reasonably should have known of any violation of the California securities act; and

3. whether the breach of fiduciary duty claims were timely filed.

(Def.'s Mot. Recons. at 2 (ECF No. 346).)

The third issue simply repeats the arguments already addressed above regarding Mr. Geringer's ability to present alternative statute of limitations calculations for the first, eighth, and ninth causes of action. Accordingly, only the first and second issues remain for reconsideration.

A.  Legal Standard

Whether to grant or deny a motion for reconsideration under Rule 59(e) is committed to the court's discretion. See Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997). The Tenth Circuit recognizes only certain grounds for granting such a motion, including those cases where movants can show: (1) an intervening change in the controlling law; (2) new evidence previously unavailable; or (3) the need to correct clear error or prevent manifest injustice.

EcoNova, Inc. v. DPS Utah, Case No. 1:12-cv-174, 2013 WL 85077 at *1 (D. Utah Jan. 7, 2013) (collecting cases).

B.  Whether the Clawson Omission was Material

Robert Clawson was found guilty by the SEC of violating federal securities laws in 2001.[7] Several years later, Robert Clawson began working for Defendants' entity, CAREIC.

---

[7] In its order, the court quoted the SEC administrative law judge (ALJ) as having found that Mr. Clawson "willfully perpetrate[d] securities fraud." Strong, 2019 WL 4601636 at *11. At the hearing for the instant motions, Mr. Clawson argued that this quotation was misleading because such language was not included in the SEC order that superseded the ALJ's findings. But having reviewed both the ALJ order and the SEC order, the court concludes this quotation was accurate. The SEC disagreed with only a single, narrow issue from the ALJ's decision regarding certain affirmative misrepresentations Mr. Clawson had allegedly made. (See SAppx. v.1 at 1256 (Ex. 15) (ECF No. 221-1).) Other than that, the SEC explicitly agreed with the ALJ that Mr. Clawson "willfully violated Securities Act Section 17(a), Exchange Act Section 10(b), and Exchange Act Rule 10b-5." (Id.) The SEC referred to Mr. Clawson's conduct as "egregious" and "a scheme," found that there was "ampl[e] evidence [of] scienter," and concluded that he showed "a lack of remorse" for his conduct. (Id. at 1257.) Accordingly, it was accurate for the court to characterize Mr. Clawson as having "willfully perpetrated securities fraud."

Information about Mr. Clawson's violations was never disclosed to CAREIC's investors.[8] Strong, 2019 WL 4601636 at *11-12. If a reasonable investor would have considered this information "material" to their decision to invest, then the failure to disclose it was a violation of California securities laws. Cal. Corp. Code § 25401 (West 2019). In its order, the court concluded that Mr. Clawson's background was material as a matter of law. Strong, 2019 WL 4601636 at *12-14.

The court's conclusion turned primarily on the centrality of Mr. Clawson's position at CAREIC. But according to Defendants, this was the wrong inquiry. They maintain that it does not matter whether Mr. Clawson "played an integral role" at CAREIC, had "significant involvement" in the company, or even was "a member of the board in all but name," as the court found. Id. at *13-14, 16. Instead, they argue that the actual question is whether Mr. Clawson performed "policy making functions" at CAREIC. See SEC v. Prince, 942 F. Supp. 2d 108, 133 (D.D.C. 2013).

In Prince, the defendant was one of six or seven employees that served as informal advisors to the CEO of a company. Id. at 113, 116-17. The defendant had a history of securities violations, and the SEC sued, arguing that the company should have disclosed those violations. Id. at 132. But the D.C. District Court held that the defendant's history only had to be disclosed if he engaged in policy making functions. It concluded that the CEO "was the only person who had authority to make company policy," while the defendant's role was purely advisory, so his past violations did not need to be disclosed. Id. at 134-36.

---

[8] Mr. Strong represents the claims of these investors in this action. See Strong, 2019 WL 4601636 at *2.

It is not clear whether this case even applies here because <u>SEC v. Prince</u> involved the

requirements of federal securities law, not California securities law.  Assuming it applies, the

original order sufficiently resolved this issue.  In their oppositions to the motion for summary

judgment, Defendants argued at length that all power at CAREIC was independently held by the

CEO, Kirby Cochran.  If true, perhaps this case would be like the <u>Prince</u> case.  But as the court

explained in its order, the evidence "overwhelming[ly]" showed that the board of directors

"operated as a true board of directors, not a superfluous advisory board."  <u>Strong</u>, 2019 WL

4601636 at *18.  Accordingly, Mr. Clawson's power and influence as a "member of the board in

all but name" is not analogous to the advisory role of the defendant in <u>Prince</u>.

Defendants also contend that the court improperly "weighed [Defendants'] evidence

against countervailing evidence submitted by Mr. Strong," rather than viewing the evidence in

the light most favorable to Defendants.  (Def.'s Mot. Recons. at 5.)  This is untrue.  The court

first reviewed Mr. Strong's evidence and found it sufficient to carry Mr. Strong's initial burden

as the moving party.  <u>Strong</u>, 2019 WL 4601636 at *13.  The court then turned to Defendants'

evidence.  It did not "weigh" Defendants' evidence in the sense Defendants imply, such as by

evaluating its reliability or credibility.  Rather, the court simply considered whether Defendants'

evidence created a triable issue of fact, in light of Mr. Strong's evidence.  The court concluded it

did not because it failed to actually rebut Mr. Strong's evidence:

> The bulk of Defendants' evidence in opposition is dedicated to demonstrating all
> the things Mr. Clawson did not do, such as the number of board meetings he did
> not attend, the number of ideas he raised that were rejected, or the fact that all of
> his work, including on the CASDF PPM, still had to be approved by Mr. Hunt and
> Mr. Cochran.  But the fact that Mr. Clawson did not have unlimited, unchecked
> powers does not counter Mr. Strong's evidence that he played an integral role in
> the operation of CAREIC.  Indeed, as Mr. Strong argues, many of the cited
> examples (such as opening bank accounts or filing articles of incorporation) are

things the legal department or accounting department—not board members or other key figures—would be expected to perform. Defendants' evidence does not raise triable issues of fact about the importance of Mr. Clawson's role at CAREIC.

Strong, 2019 WL 4601636 at *13. Concluding that evidence is insufficient to raise a triable issue is not the same as improperly "weighing" the evidence.

For these reasons, the court declines to reconsider its conclusions regarding the materiality of Mr. Clawson's background to potential investors.

C. Defendants' Knowledge of Mr. Clawson's Violations

Under California law, Defendants cannot be liable for failing to disclose Mr. Clawson's background if they "had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist." Cal. Corp. Code § 25504 (West 2019).

The court held that Defendants, as a matter of law, should have been aware of Mr. Clawson's past violations. Strong, 2019 WL 4601636 at *19. The court's decision was based on the following: (1) Defendants had a motive to investigate Mr. Clawson, given his significant role in the company; (2) If they had conducted an investigation, they easily would have uncovered this information, given its availability and accessibility; and (3) Mr. Clawson's own testimony strongly implied he had personally disclosed this information to Defendants, since he declared that it was his habit to "freely disclose[] and discuss[] [his] prior SEC enforcement action," and that he "always introduced [himself] as a former broker, which generally led to questions [about] such qualifier ('former')." Id.

Defendants suggest that this conclusion was incorrect for three reasons. The court rejects two of these arguments but will reconsider its decision based on the third.

First, Defendants claim that "the internet in 2019 is vastly different than it existed in 2004 when CAREIC was formed, and there was no evidence submitted as to how difficult (or easy) it would have been to have discovered Mr. Clawson's SEC issues on the internet in 2005."  (Def.'s Mot. Recons. at 6.)  This statement is incorrect; the court's conclusion <u>was</u> based on evidence, specifically the testimony of Mr. Clawson himself, who stated:

> As a former broker, this information [about his violations] was available to my clients, prospective clients, my broker-dealer and any individual that called NASD, or beginning in 1998, searched my name on BrokerCheck. Further, anyone searching my name on the internet (such as Yahoo or AltaVista as this was before Google), would immediately find the [accusations] and subsequent ALJ finding and Commission opinion.

<u>Strong</u>, 2019 WL 4601636 at *19.  Defendants could have submitted evidence contradicting their co-defendant and showing that, contrary to his contention, this information was not easy to find.  They did not do so.

Second, Defendants argue they had no motive to investigate Mr. Clawson's background because he was not a key employee of CAREIC.  Defendants characterize the court's finding that he was an integral figure as an "ex post facto determination."  (Def.'s Mot. Recons. at 6.)  They claim that the court failed to acknowledge that at the time CAREIC was operating, Defendants sincerely believed that Mr. Clawson was not an important figure, even if this belief was later found to be incorrect.  But the court did not merely conclude that Mr. Clawson was important in retrospect; the court held that "Mr. Strong's evidence shows CAREIC's principals viewed Mr. Clawson as an officer."  <u>Id.</u> at *13.  In other words, the court's conclusion, upon review of the evidence, was that Defendants had always understood Mr. Clawson to be a central figure at CAREIC.  Suggesting that Mr. Clawson merely appears to have been an important figure in hindsight mischaracterizes the court's holding.  Because Defendants were already aware of Mr.

Clawson's central role, they had an obligation to determine whether his involvement in the entity needed to be disclosed to potential investors.

Third, Defendants emphasize that they had no obligation to independently investigate Mr. Clawson because he had been investigated by other members of CAREIC's leadership.[9] Responding to this argument in its original order, the court noted, "Defendants cite no legal authority for the proposition that reliance on their attorney or their accountant relieved them of any independent obligation to conduct even cursory due diligence into one of their key coworker's background." Strong, 2019 WL 4601636 at *19 n.21.

But Defendants now provide the needed legal authority. They point to Howard v. SEC, 376 F.3d 1136 (D.C. Cir. 2004), which held that "reliance on the advice of counsel . . . is . . . evidence of good faith, a relevant consideration in evaluating a defendant's scienter." Id. at 1147; accord SEC v. Snyder, 292 F. App'x 391, 406 (5th Cir. 2008) ("We find no meaningful distinction between the reliance on counsel and reliance on an accountant. Both defensive theories provide an explanation of the defendant's conduct tending to negate the element of scienter. Under both theories, the jury is free to decide for itself whether the facts demonstrate that the defendant acted with scienter in light of the advice he received from his attorneys or accountants.").

Upon reviewing these cases and the evidence previously submitted in opposition to Mr. Strong's summary judgment motion, the court now reconsiders its ruling on this issue. Because reliance on the recommendations of counsel may be legitimate evidence that Defendants should

---

[9] In the original oppositions to the motion for summary judgment, Defendants said Mr. Clawson's background was reviewed by CAREIC's general counsel, David Hunt, and its CFO, Doug Child. Strong, 2019 WL 4601636 at *19 n.21. In the instant motion, they now add that CAREIC's CEO, Kirby Cochran, also investigated him. (Geringer Aff. ¶ 8 (ECF No. 348).)

not be held liable for failing to uncover Mr. Clawson's background, the court concludes that its previous order was premature. On this issue, Mr. Strong's motion should have been denied, because there are triable issues of fact regarding whether Defendants knew or should have known of "the existence of the facts by reason of which the liability is alleged to exist." Cal. Corp. Code § 25504.

## III.    Bifurcation

Mr. Strong moves for a separate trial on the applicability of the statute of limitations to his second claim. Specifically, Mr. Strong requests an order:

> (1) directing that a separate trial be held solely on whether the statute of limitations applicable to the California state securities laws bars the claim, and in particular:
>
>> (A) whether a reasonable investor would have been on inquiry notice regarding the PPMs' failure to disclose Mr. Clawson and his history of securities fraud, and
>>
>> (B) if on inquiry notice, when thereafter a reasonably diligent investor should have discovered facts underlying the possible fraud ("Securities Statute of Limitations Trial");
>
> (2) setting the Securities Statute of Limitations Trial for three or fewer trial days, at the earliest date this Court can accommodate;
>
> (3) continuing until after the conclusion of Securities Statute of Limitations Trial further discovery in this matter and trial of all remaining claims and issues; and
>
> (4) entering an Amended Scheduling Order, reflecting these rulings.

(Pl.'s Mot. Bifurcate Trial at 3.)

Mr. Strong argues this would be the most efficient way to approach the case because, if Mr. Strong prevails at the trial (which he defines as obtaining a "substantial money judgment," see id. at 2) then he would dismiss all other causes of action.

A. Legal Standard

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The court has "considerable discretion" in determining whether to order a bifurcated trial. Angelo v. Armstrong World Indus., Inc., 11 F.3d 957, 964 (10th Cir. 1993). But before granting a motion for bifurcation, the court must consider three factors: (1) whether bifurcation promotes "convenience and economy"; (2) whether the claims to be bifurcated are truly separable; and (3) whether bifurcation would be unfair or prejudicial to one of the parties. Id. at 964-65.

B. Analysis

As an initial matter, the court notes that Mr. Strong's request has already become more complicated because of the court's order above on the motions for clarification and reconsideration. At a minimum, any bifurcated trial would now need to address the actual notice defense and Defendants' reliance on counsel, in addition to the reasonable notice issue previously identified by Mr. Strong, in order to fully resolve the second claim.

Particularly in light of this expanded scope, the court is not convinced that a bifurcated trial would promote convenience and economy. The trial would almost certainly be longer than Mr. Strong currently estimates, given the inclusion of these other issues. And unless Mr. Strong obtains a "substantial money judgment" from the jurors, the trial would not seriously advance judicial economy, because the rest of the case would still remain to be resolved.

It is also unclear how separable this one claim really is. After all, if Mr. Strong loses, the court and the parties would still have to address the state securities law claims from Arizona,

Utah, and Nevada, which are in many ways duplicative of the California claim he seeks to take to trial. And there would likely be at least some witnesses who would need to be called multiple times to explain to two different juries how CAREIC was organized, how it functioned, and how it was doing financially, before it ultimately declared bankruptcy, since these issues are relevant both to determining whether investors had reasonable notice of problems with CAREIC and to the breach of fiduciary duty claims that could be tried later.

Finally, the court is concerned that the proposed bifurcation is too one-sided. While a bifurcated trial is beneficial to Mr. Strong if he wins, the inverse is not true. There would be only minimal benefit to Defendants if they win because they would have to continue defending the rest of the claims in the suit.

For all of these reasons, Mr. Strong's motion for a bifurcated trial is denied.

## IV.    Other Unresolved Issues

On December 6, 2018, the court held a status conference to address the fact that four motions for summary judgment had been filed in this action. Two of those motions (ECF Nos. 221, 244) were resolved by the court's September 23, 2019 order. (ECF No. 334.) A third motion has been filed by Mr. Geringer and is fully briefed. (See ECF No. 225.) A fourth motion has been filed by Mr. Austin (ECF No. 307) but has not been fully briefed because the court ordered that nothing more be filed in that matter until the other motions were resolved. (ECF No. 314.)

The court now sets the following scheduling order so that these matters can be resolved:

- The opposition to Mr. Austin's motion for summary judgment (ECF No. 307) shall be filed by February 21, 2020. The reply, if any, shall be filed by March 6, 2020. The motion will be heard on March 25, 2020.

- Mr. Geringer's motion for summary judgment (ECF No. 225) will also be heard on March 25, 2020.

The court understands that the parties also dispute the amount of discovery that should be allowed in this action, particularly in light of the court's conclusion above that Defendants have not waived their actual notice affirmative defense. Defendants argued at the hearing that they should be permitted to depose each of the individual investors whose claims are now being pursued by Mr. Strong in his role as trustee. According to the parties' representations at the hearing, this would require approximately 150 depositions.

The appropriate number of depositions is not properly before the court as part of the pending motions, so the court declines to enter any orders regarding that issue at this time. That said, the court notes the following regarding how the parties should proceed.

The parties' original scheduling order authorized twenty depositions for each side. (ECF No. 136.) But according to Mr. Geringer, "The only discovery that has been conducted so far is the production of documents and responses to interrogatories. No depositions have been taken on the merits and no written discovery or depositions have been taken of any third-party witnesses." (Geringer Aff. ¶ 5 (ECF No. 348).)

Because of the number of pending motions for summary judgment, the parties were previously instructed to file a new proposed scheduling order after those motions were resolved. (See June 11, 2018 Order (ECF No. 237).) The court reaffirms that, once it has ruled on those

motions, the parties will need to submit a new scheduling order. At that time, the parties may also brief how many additional depositions, if any, they believe should be permitted.

To be clear, nothing in this order, including the court's conclusion that Defendants have not waived their actual notice affirmative defense, should be construed as authorizing additional depositions. Should any party request permission to take additional depositions, the court at that time will weigh the purpose of the depositions, questions of fairness and prejudice, past representations from the parties regarding their discovery needs, the overall history and status of the case, and all other relevant factors in making its determination. Until such issues are fully briefed, all prior discovery orders remain in place.

## ORDER

Mr. Geringer's motion for clarification (ECF No. 347), Mr. Geringer's motion for reconsideration (ECF No. 346), Mr. Austin's motion to join the motions for clarification and reconsideration (ECF No. 349), and Mr. Davidson's motion for reconsideration and clarification (ECF No. 350) are all GRANTED in part and DENIED in part, as discussed above.

Mr. Geringer's motion for discovery under Rule 56(d) is DENIED.

Mr. Strong's motion for bifurcation is DENIED.

DATED this 30th day of December, 2019.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge