IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| D. RAY STRONG, as Liquidating Trustee of the Consolidated Legacy Debtors Liquidating Trust, the Castle Arch Opportunity Partners I, LLC Liquidating Trust, and the Castle Arch Opportunity Partners II, LLC Liquidating Trust,<br><br>                Plaintiff,<br><br>vs.<br><br>KIRBY D. COCHRAN; JEFF AUSTIN; AUSTIN CAPITAL SOLUTIONS; WILLIAM H. DAVIDSON; ROBERT CLAWSON; HYBRID ADVISOR GROUP; ROBERT D. GERINGER; ROBERT D. GERINGER, P.C.; FINE ARTS ENTERTAINMENT; and DOES 1-50,<br><br>                Defendants. | ORDER AND MEMORANDUM OF DECISION<br><br>Case No. 2:14-cv-00788-TC-DAO |

       Castle Arch Real Estate Investment Company (CAREIC) declared bankruptcy in 2011. In 2012, the bankruptcy court appointed Plaintiff D. Ray Strong as trustee. He was assigned all claims that CAREIC had against its former officers and directors and brought this action to pursue those claims against, among others, CAREIC's former president, Defendant Robert Geringer.

       On April 25, 2018, Mr. Geringer filed a motion for partial summary judgment (ECF No. 225), arguing that four of Mr. Strong's causes of action are barred by the principle of res

judicata. For the reasons stated below, the court concludes that res judicata does not apply here, and Mr. Geringer's motion for partial summary judgment is denied.

## BACKGROUND

CAREIC was formed in 2004 with Mr. Geringer serving as president and as a member of the board of directors. See In re Castle Arch Real Estate Investment Company, LLC ("In re Castle Arch"), No. 11-35082, 2013 WL 1603319 at *1 (Bankr. D. Utah Apr. 15, 2013). Mr. Geringer resigned from CAREIC in 2009. (G. App'x at 0021.)[1] CAREIC declared bankruptcy in 2011 and Mr. Strong was appointed trustee on May 3, 2012. (S. App'x 0010, 0034.)

On February 17, 2012, Mr. Geringer filed a proof of claim in the bankruptcy action, contending that CAREIC owed him over $7.7 million. About $7.2 million of this amount was to indemnify Mr. Geringer for certain personal guarantees that CAREIC had allegedly required him to enter. The remaining $550,000 was for unpaid wages CAREIC owed Mr. Geringer for his work as a manager. (G. App'x at 0185, 0188.) Mr. Strong objected to the claim. (Id. at 0245.)

The bankruptcy court held a two-day evidentiary hearing to resolve the dispute on February 28 and March 1, 2013. At the start of the hearing, Mr. Strong's counsel warned that, in addition to objecting to Mr. Geringer's proof of claim, the trustee would be bringing his own claims against Mr. Geringer at a later date:

> [O]ur claim objection is being made with the reservation of rights. . . . [A]ny . . . amount that may be allowed by the court . . . is subject to affirmative claims that the trustee may have against Mr. Geringer, including claims for subordination, fraudulent transfer offset, and other causes of action. Those issues will be addressed in an appropriate adversary proceeding.

(Id. at 1217:22-1218:10.)

---

[1] Mr. Geringer's appendix of evidence is spread across ECF Nos. 225, 226, 227, 228, and 229. The court will cite the appendix as "G. App'x" followed by a page number. Mr. Strong's appendix of evidence is available at ECF No. 249-1, and will be cited as "S. App'x."

2

    Mr. Geringer's counsel objected to any such reservation of rights:

> [W]ith respect to the trustee's reservation of rights, we've seen that purported reservation in pleading after pleading after pleading. I just want to make it absolutely clear for the record that Mr. Geringer does not stipulate [to] any reservation of rights. The trustee can purport to reserve whatever rights the trustee may have, but the fact of the matter is that matters decided have res judicata and collateral estoppel effects and we don't stipulate to limit those effects of whatever the court's decision may be.

(Id. at 1226:22-1227:7.)

    In response to this exchange, Judge Joel Marker expressed surprise that the proof of claim proceeding could have res judicata effect. (Id. at 1228:1-19 ("I can understand issue preclusion. I'm not sure if I can understand claim preclusion. If you're arguing that the trustee . . . can't bring [other claims later], that would be of concern to me.").) Judge Marker asked if the hearing on the objection needed to be continued so that Mr. Strong could include his counterclaims in the proceeding. Counsel for Mr. Strong declined, stating "we understand the issues of claim and issue preclusion" and that to the extent other claims existed, the trustee would pursue them "at an appropriate time." (Id. at 1227:8-1230:4.)

    The hearing went forward as scheduled and on April 15, 2013, the court issued an order denying Mr. Geringer's indemnification claim and granting his unpaid wages claim, awarding him approximately $250,000. See In re Castle Arch, 2013 WL 1603319 at *8-10.

    Mr. Strong subsequently filed a lawsuit in federal district court against Mr. Geringer. See Strong v. Geringer, 2:15-cv-00837-TC (D. Utah). That action was consolidated into this case on February 28, 2017 (see ECF No. 100) and the operative Amended Complaint was filed on May 8, 2017 (see ECF No. 150).

Mr. Geringer filed this motion for summary judgment on April 25, 2018.[2] (ECF No. 225.) He argues that the first cause of action for breach of fiduciary duty, seventh cause of action for subordination, eighth cause of action for constructive trust, and ninth cause of action for unjust enrichment (the "fiduciary claims") are all barred by res judicata.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (internal quotation omitted)).

"If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." Talley v. Time, Inc., 923 F.3d 878, 893-94 (10th Cir. 2019) (internal quotation omitted). Should the nonmovant bear the burden of persuasion at trial, "[t]hese facts must establish, at a minimum, an inference of the presence of each element essential to the case." Id. (quoting Savant Homes, Inc. v. Collins, 809 F.3d 1133, 1137 (10th Cir. 2016)).

When evaluating a motion for summary judgment, the court must view the facts and draw all reasonable inferences in favor of the non-moving party. Tabor, 703 F.3d at 1215. But this is only true insofar as "there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for

---

[2] Several other motions for summary judgment were filed around the same time (see ECF Nos. 221, 244, 307), and each has been resolved by earlier orders (see ECF Nos. 334, 338, 386).

4

the nonmoving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986)).

## ANALYSIS

Mr. Geringer argues that the fiduciary claims are barred by the principle of res judicata, which is also known as claim preclusion.

> We require defendants to prove three elements to prevail on this defense: "(1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." Lenox MacLaren Surgical, 847 F.3d at 1239 (quoting King, 117 F.3d at 445). "In addition, even if these three elements are satisfied, there is an exception to the application of claim preclusion where the party resisting it did not have a 'full and fair opportunity to litigate' the claim in the prior action." Id. (quoting MACTEC, 427 F.3d at 831 & n.6).

Johnson v. Spencer, 950 F.3d 680, 708 (10th Cir. 2020).

Mr. Strong does not challenge the first or second elements. After all, it is well established that a bankruptcy court's ruling on a proof of claim is a final judgment for purposes of claim preclusion. See Katchen v. Landy, 382 U.S. 323, 334 (1966). And the relevant parties in this case—Mr. Geringer and Mr. Strong, as trustee for CAREIC—are identical to the parties in the bankruptcy case.

Instead, Mr. Strong focuses on the third element, arguing that Mr. Geringer's bankruptcy claim and Mr. Strong's fiduciary claims involve fundamentally different causes of action. Mr. Strong also contends that he did not have a full and fair opportunity to pursue his fiduciary claims as part of the bankruptcy action.[3]

---

[3] As an alternative argument, Mr. Strong asserts that even if the elements of res judicata have been met here, the disclosure statement and the liquidation plan approved by the bankruptcy court reserved Mr. Strong's right to bring the fiduciary claims at a later time. Because the court concludes that res judicata does not apply here, it does not address this argument.

5

A.	**Similarity of the Causes of Action**

To determine whether Mr. Geringer's bankruptcy claim and Mr. Strong's fiduciary claims are part of the same cause of action, the court "embraces the transactional approach to the definition of 'cause of action.'" Nwosun v. Gen. Mills Rest., Inc., 124 F.3d 1255, 1257 (10th Cir. 1997).

> Under this approach, a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence. All claims arising out of the transaction must therefore be presented in one suit or be barred from subsequent litigation.

Id. The Tenth Circuit has additionally noted that the word "transaction" is "flexible." Fox v. Maulding, 112 F.3d 453, 457 (10th Cir. 1997). "It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Id. (quoting Moore v. New York Cotton Exch., 270 U.S. 593, 610 (1926)).

As relevant here, Mr. Geringer's bankruptcy claim was essentially one for breach of contract: CAREIC promised to pay Mr. Geringer certain wages and breached that promise by failing to make the required payments.

Mr. Strong argues that his fiduciary claims are entirely different. The court disagrees. The fiduciary claims are closely entangled with Mr. Geringer's claim. For example, Mr. Strong contends that the breach of fiduciary duty claim involves duties of care and loyalty that arose from Mr. Geringer's position as a manager of CAREIC. Such duties, Mr. Strong notes, are imposed by law, not by contract. But this argument is circular. Mr. Geringer was only a manager of CAREIC because he signed a contract that put him in that position. In other words, the law would not impose any fiduciary duties upon Mr. Geringer absent CAREIC's contractual agreement to pay him wages in exchange for his services as president of the company.

Similarly, Mr. Strong argues that his claims for subordination, constructive trust, and unjust enrichment are imposed as a matter of equity, not contract. According to Mr. Strong, it would be unjust for Mr. Geringer to retain the benefits he obtained from his work at CAREIC when his alleged misconduct contributed to CAREIC's eventual bankruptcy. But once again, these equitable concerns only exist because of the contractual relationship that first put Mr. Geringer in a position from which harming CAREIC was possible.

In short, Mr. Geringer's claim and Mr. Strong's claims are significantly interrelated. Ultimately, Mr. Geringer's analogy to Fox v. Maulding persuades the court that the fiduciary claims are part of the same cause of action as the bankruptcy claim.

In Fox v. Maulding, Odell Fox took out numerous loans from Dwight Maulding. After Mr. Fox defaulted on one of the loans, Mr. Maulding brought suit in state court and received permission to foreclose on Mr. Fox's house, which had been used as collateral for one of the loans. Mr. Fox responded by filing an action in federal court, alleging that all of the loans had been obtained through fraudulent misrepresentations. Id. at 455-56. Like the case here, the state action in Fox v. Maulding was a relatively simple contract claim: Mr. Fox had failed to repay the loan, so Mr. Maulding sought to foreclose the collateral. The second suit was for numerous torts, mostly based in fraud, and covered all of the loans rather than just one. Nevertheless, the Tenth Circuit held that the same cause of action was at stake in each case. Id. at 457.

The same conclusion applies here. The bankruptcy claim was, in some ways, much simpler than the fiduciary claims at issue in this action. And it was a contract claim, while the fiduciary claims include a tort and three equitable causes of action. But just as in Fox, these superficial differences disappear upon a closer examination of the issues at stake. All of the claims are about a single relationship between Mr. Geringer and CAREIC. The various claims

are simply two sides of the same coin: Mr. Geringer claimed that CAREIC owed him money for his services, while Mr. Strong contends that, because of deficiencies in the performance of those same services, CAREIC should be able to recover damages from Mr. Geringer. Viewed this way, the court concludes the bankruptcy claim and the fiduciary claims are part of the same cause of action.

**B.      Full and Fair Opportunity to Litigate**

Mr. Strong argues that even if the fiduciary claims are part of the same cause of action as Mr. Geringer's bankruptcy claim, he did not have a "full and fair opportunity to litigate the claim in the prior action." Johnson, 950 F.3d at 708 (internal quotations omitted).

Mr. Strong's argument is based primarily on the distinction between "contested matters" and "adversarial proceedings" in bankruptcy court. When Mr. Strong objected to Mr. Geringer's proof of claim, it became a contested matter, which by definition is a very narrow proceeding. In fact, under the bankruptcy rules, Mr. Strong was prohibited from raising the fiduciary claims in the contested matter. See Fed. R. Bankr. P. 3007(b). Instead, if Mr. Strong wanted to raise the fiduciary claims, he would have been required to initiate a separate adversarial proceeding. See Fed. R. Bankr. P. 7001. Mr. Strong argues that the res judicata inquiry asks only whether he had an opportunity to litigate his fiduciary claims as part of the earlier contested matter, not whether there was an opportunity to pursue the fiduciary claims in some other proceeding that could have been filed. And because he could not have raised the fiduciary claims in the contested matter, Mr. Strong argues that res judicata should not apply. The court agrees.

The clearest articulation of Mr. Strong's position is found in Davenport v. Djourabchi, 316 F. Supp. 3d 58 (D.D.C. 2018). In Davenport, the plaintiff had obtained a loan from the defendant by placing his restaurant as collateral. After the defendant threatened to foreclose on

8

the property, the plaintiff filed for bankruptcy. The defendant filed a claim in the bankruptcy court, asserting that the plaintiff was in default on the loan and owed the defendant $120,000. The plaintiff objected to the claim, which meant the claim became a contested matter. Ultimately, the bankruptcy court ordered the plaintiff to pay the defendant approximately $50,000. Id. at 61.

The plaintiff then filed a separate action in federal district court, alleging that the defendant had made misrepresentations regarding the loan and had harassed the plaintiff regarding repayment of the loan. The defendant moved to dismiss on the ground of claim preclusion. The district court denied the motion.[4]

First, the court noted—as Mr. Strong does here—that contested matters and adversary proceedings are entirely separate.

> "Contested matters" are designed to adjudicate simple issues on an expedited basis and are therefore not governed by the full panoply of rules that pertain to federal civil actions. . . . Rather, they only involve motions practice and "reasonable notice and opportunity for a hearing." Fed. R. Bankr. P. 9014(a). In comparison, "adversary proceedings" are governed by Part VII of the Federal Rules of Bankruptcy Procedure, which incorporates the Federal Rules of Civil Procedure. See Fed. R. Bankr. P. 7001.

Id. at 65-66. The court further noted that under Bankruptcy Rule 3007, if relief is supposed to be obtained through an adversary proceeding, then a party is prohibited from attempting to raise such issues in a contested matter:

> Rule 3007(b) and the Advisory Committee Notes make it clear that a contested matter initiated by the filing of an objection to a proof of claim and an adversary proceeding are distinct bankruptcy proceedings, and that certain demands for relief cannot be brought in a contested matter. . . . Therefore, [the plaintiff] could not have brought his claims for damages when he contested defendants' proof of claim in the bankruptcy case.

---

[4] The court initially granted the motion to dismiss, see Davenport v. Djourabchi, 296 F. Supp. 3d 245 (D.D.C. 2017), before reversing itself upon reviewing the plaintiff's motion for reconsideration. Davenport, 316 F. Supp. 3d at 61.

9

Id. at 66.

Because the plaintiff could not have brought his claims as part of the contested matter, the court ruled that claim preclusion did not apply to the subsequent suit, even though the plaintiff could have obtained relief by initiating an adversary proceeding.

> [T]he res judicata inquiry does not look to whether a claim could have been brought in the previous court; it examines if the second claim could have been brought in the first proceeding. . . . [C]ontested matters are reserved for those seeking to resolve narrow issues quickly. And regardless of whether [the plaintiff] could have brought his state and common law claims in a separate adversary proceeding and then consolidated them with his claim objection, the damages claims could not have been raised in the claim objection proceeding itself. . . . [The plaintiff], therefore, could not have brought his damages claims in the contested matter that was litigated in the bankruptcy court, and he is not barred by res judicata from bringing them now.

Id. at 68 (emphasis in original).

This court reaches the same conclusion here. The parties agree that Mr. Strong could not have brought his fiduciary claims in the contested matter. Accordingly, Mr. Strong did not have an opportunity to litigate the fiduciary claims in the earlier proceeding. While Mr. Strong could have commenced an adversary proceeding to present those claims to the bankruptcy court, res judicata does not apply to claims that could have been pursued in entirely separate proceedings; it applies only to claims that could have been pursued in the earlier contested matter.

Mr. Geringer tries to portray Davenport as an aberration that the court should ignore. But Mr. Strong cites numerous cases that support Davenport's conclusion. See, e.g., In re George, 318 B.R. 729, 737-38 (B.A.P. 9th Cir. 2004); D-1 Enters., Inc. v. Commercial State Bank, 864 F.2d 36, 39 (5th Cir. 1989); In re Pettingill Enters., Inc., Case No. 11-12-10515, 2012 WL 5387700, at *4-5 (Bankr. D.N.M. Nov. 12, 2012) (collecting cases); In re Knights Athletic Goods, Inc., 128 B.R. 679, 683 (D. Kan. 1991); In re Fonda Grp., Inc., 108 B.R. 962, 969-70 (Bankr. D.N.J. 1989).

These cases recognize that the res judicata inquiry is often closely associated with determining whether a certain cause of action would be a compulsory counterclaim or a permissive counterclaim.  See In re Pettingill Enters., Inc., 2012 WL 5387700 at *4 ("Claim preclusion forces a plaintiff to explore all of the facts, develop all the theories, and demand all the remedies in the first suit that pertain[s] to a particular transaction or series of related transactions forming the basis of a plaintiff's claims. . . .  A defendant, however, generally need only assert compulsory counterclaims to avoid application of res judicata in a subsequent suit.") (internal quotations omitted).  But the bankruptcy rules do not mandate that any counterclaims be filed in response to contested matters.

> [E]ven the compulsory counterclaim rules found in Bankruptcy Rule 7013, [which apply only to adversary proceedings, not contested matters] include a liberal escape clause:
>
>> A trustee or debtor-in-possession who fails to plead a counterclaim through oversight, inadvertence, or excusable neglect, or when justice so requires, may by leave of court amend the pleading, or commence a new adversary proceeding in a separate action.
>
> Bankruptcy Rule 7013.  If the compulsory counterclaim rule is this generous to the trustee or debtor [in an adversary proceeding], it would be odd indeed for us to hold that the debtor must assert all related claims in a contested matter . . . to which the compulsory counterclaim rules do not even apply.  That would lay a heavier burden on the debtor to respond with related claims in some unspecified contested matters than in adversary proceedings, an exact inversion of the apparent wishes of Congress.
>
> D-1 Enters., 864 F.2d at 40 (internal quotations omitted).

The court finds these cases persuasive.  Mr. Strong was not required by the bankruptcy rules to file any counterclaims in the contested matter.  In fact, the rules prohibited him from doing so.  His only recourse was to initiate a new adversary proceeding.  And it would be an unjustified expansion of res judicata to preclude Mr. Strong's fiduciary claims due solely to his failure to file an adversary proceeding against Mr. Geringer in the bankruptcy action.

11

Mr. Geringer notes that none of the cases cited by Mr. Strong are binding on this court because all of them come from other jurisdictions. Mr. Geringer urges the court to disregard these cases and instead follow two cases that are binding: Katchen v. Landy, 382 U.S. 323 (1966), and Plotner v. AT&T Corp., 224 F.3d 1161 (10th Cir. 1999). But neither of the cases cited by Mr. Geringer address the issue presented here.

First, in Katchen, a trustee prevailed against a claimant in a contested matter.[5] The claimant argued that the trustee must bring a separate adversary proceeding to fully vindicate the ruling in the contested matter. The Supreme Court disagreed, holding that the dispute had been appropriately resolved in the contested mater, and that relitigating the same issue in an adversary proceeding would violate the principles of res judicata. In other words, the Supreme Court confirmed that res judicata applied to disputes actually resolved in a contested matter. Katchen, 382 U.S. at 334-35. But the decision said nothing about claims that were not raised—and, more importantly, could not have been raised—in a contested matter. Accordingly, Katchen is inapplicable.

Mr. Geringer's other case, Plotner, also does not address the issue before this court. The dispute in Plotner centered on the res judicata effect of "core" proceedings versus "non-core" proceedings. Core proceedings are those for which the bankruptcy court may enter a final judgment. These judgments clearly have res judicata effect. Non-core proceedings are those for which the bankruptcy court may only issue findings of fact and conclusions of law for the district court to review. Only the district court may actually enter a final judgment for those issues. In Plotner, the Tenth Circuit held that the findings and conclusions issued by bankruptcy courts in

---

[5] The terms "contested matter" and "adversary proceeding" were not used in the case, as these terms were invented later. Rather, contested matters are referred to as "summary proceedings" or "summary disposition," while adversary proceedings are referred to as "plenary actions" or "plenary proceedings." See generally In re Riding, 44 B.R. 846 (D. Utah 1984) (discussing the evolution of contested matters and adversary proceedings before 1973).

non-core proceedings also have res judicata effect. Plotner, 224 F.3d at 1170. But Plotner never addressed the res judicata effect of contested matters or adversary proceedings.[6]

In addition to Katchen and Plotner, which are binding on this court, Mr. Geringer also argues that the court should disregard Davenport and instead follow two cases from other circuits, EDP Medical Computer Systems Inc. v. United States, 480 F.3d 621 (2d Cir. 2007), and Eubanks v. FDIC, 977 F.2d 166 (5th Cir. 1992). Again, neither of these cases address the situation before the court here. In EDP Medical, the Second Circuit held that where a creditor filed a claim, and the debtor did not object to the claim, this failure to object precluded a subsequent suit on the same issue. EDP Medical, 480 F.3d at 626. But importantly, even though the debtor did not object to the claim, he could have done so. Here, Mr. Strong could not have raised the fiduciary claims in his objection to Mr. Geringer's claim; his only option was to initiate a separate adversary proceeding.

Meanwhile, Eubanks v. FDIC focuses on the res judicata effect to be given to a confirmed bankruptcy plan. The court noted that whether a party challenged that plan through a contested matter or an adversary proceeding was an "important factor in determining if the claim could or should have been effectively litigated in the earlier proceeding," but nevertheless held that in some circumstances, even an unchallenged plan could preclude a subsequent claim. Eubanks, 977 F.2d at 174. Here, Mr. Geringer has not argued that the liquidation plan bars Mr. Strong's claim, only that the order from the contested matter bars the claim. Accordingly, Eubanks is inapplicable.

---

[6] The distinction between core proceedings and non-core proceedings is unrelated to the distinction between contested matters and adversary proceedings. In fact, Plotner was only addressing an adversary proceeding; contested matters were not even mentioned in the case.

Having reviewed all of the cases cited by the parties, the court is persuaded that it should follow Davenport.  Mr. Strong was barred by the bankruptcy rules from including the fiduciary claims in the contested matter.  His only option was to file an entirely separate adversary proceeding.  Res judicata may bar counterclaims or affirmative defenses that could have been, but were not, raised in an earlier proceeding, but it does not bar claims that could only have been brought if a new proceeding was initiated.  Davenport, 316 F. Supp. 3d at 68 ("[T]he res judicata inquiry does not look to whether a claim could have been brought in the previous court; it examines if the second claim could have been brought in the first proceeding.") (emphasis in original).  Accordingly, the court concludes Mr. Strong did not have a full and fair opportunity to litigate the fiduciary claims as part of the contested matter in the bankruptcy precluded.[7]

## ORDER

1. Mr. Geringer's motion for partial summary judgment (ECF No. 225) is DENIED.
2. Now that the last pending summary judgment motion has been resolved, the parties are ordered to file a motion to amend the scheduling order within fourteen days.  (See June 11, 2018 Order of Mag. J. Evelyn Furst (ECF No. 237).)

DATED this 16th day of July, 2020.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge

---

[7] In a separate argument, Mr. Strong contends that even if he was required to file an adversary proceeding, res judicata would not apply because the fiduciary claims are "non-core" proceedings rather than "core" proceedings. Mr. Strong acknowledges that under Plotner, res judicata would apply regardless of this distinction, but Mr. Strong contends that Plotner was poorly reasoned and that this court should instead follow the Fifth and Seventh Circuits in concluding that non-core claims have no preclusive effect.  See Barnett v. Stern, 909 F.2d 973 (7th Cir. 1990); Howell Hydrocarbons Inc. v. Adams, 897 F.2d 183 (5th Cir. 1990).  Because Plotner remains the law within the Tenth Circuit, this court could not disregard its ruling even if it agreed with Mr. Strong's complaints about its reasoning.  Regardless, the court need not reach this issue because the court concluded above that res judicata does not apply for other reasons.